# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01083-SCT

*SIDHARTH SOLANKI, INDIVIDUALLY, AND AS
WRONGFUL DEATH BENEFICIARY; DEVESHA
S. SOLANKI AND AVANI S. SOLANKI, MINORS
BY AND THROUGH THEIR FATHER AND
NATURAL GUARDIAN, SIDHARTH SOLANKI,
AND NEHA SOLANKI, WRONGFUL DEATH
BENEFICIARIES OF NILIMA SOLANKI,
DECEASED, AND ALL OTHER WRONGFUL
DEATH BENEFICIARIES OF NILIMA SOLANKI,
DECEASED*

*v.*

*MELVIN TYRONE ERVIN AND THE
MERCHANTS COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2008 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DON H. EVANS |
| | HARRY MERRITT McCUMBER |
| | CHRISTIE EVANS OGDEN |
| ATTORNEYS FOR APPELLEES: | ROY H. LIDDELL |
| | JOSEPH SPENCER YOUNG, JR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 08/27/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    This case arises out of a two-vehicle accident that took place on Interstate 220 in

Hinds County, Mississippi, on March 29, 2007. As a result of the accident, one of the drivers

died. Her husband and wrongful-death beneficiaries filed suit against the other driver and his employer, alleging negligence. After a trial, the jury found in favor of the defendants. Thereafter, the plaintiffs appealed to this Court.

**FACTS**

¶2. On March 29, 2007, Nilima Solanki was driving southwest[1] on I-220 in Hinds County, Mississippi, when her car, a Toyota Camry, broke down. It is not known exactly what happened to the car, but, ultimately, it stopped in the left lane of I-220, near the yellow line. The portion of I-220 in question did not have a shoulder lane on the left side, although there is a grassy median between the westbound lanes and eastbound lanes of the highway. Melvin Tyrone Ervin (Ervin) was also driving southwest on I-220 on March 29, 2007. He was driving an eighteen-wheeler tractor-trailer to deliver groceries for his employer, The Merchants Company (Merchants). Although Ervin was initially driving in the right lane of I-220, at some point, he moved into the left lane.

¶3. The facts regarding the exact chain of events leading up to the collision between Ervin's truck and Nilima Solanki's car are unclear and are disputed by the parties. It is undisputed, however, that Ervin's truck collided with Nilima Solanki's car on March 29, 2007. After the accident, Nilima Solanki's car came to a rest in the right lane of I-220. Ervin's tractor-trailer slid down the highway on its side before coming to rest predominantly in the left lane of the highway. As a result of the accident, Nilima Solanki suffered brain

---

[1] The Solankis' complaint states that she was driving west on I-220. The Solankis' expert, James Hannah, explained that I-220 runs northeast-southwest. However, he stated that people commonly refer to the direction in which Nilima Solanki and Ervin were traveling as south.

2

trauma and died in the hospital nine days later. Additional facts will be provided in the analysis below.

¶4. On April 10, 2007, Nilima Solanki's husband, Sidharth Solanki (Solanki), and Nilima Solanki's oldest daughter, Neha Solanki[2] (together, the Solankis), filed a complaint in Hinds County Circuit Court against Ervin, Merchants, ten John Doe Person(s), and ten John Doe Entity(ies). The Solankis alleged negligence and sought compensatory and punitive damages. On May 8, 2007, Merchants filed an answer, affirmative defenses, and a counterclaim. On the same day, Ervin filed an answer and affirmative defenses. On May 24, 2007, the Solankis filed an answer and defenses to Merchants' counterclaim.

¶5. On January 15, 2008, Merchants and Ervin (together, the Defendants) filed a motion for partial summary judgment, arguing for judgment as a matter of law with regard to the Solankis' claim for punitive damages. On January 24, 2008, Defendants filed a motion for partial summary judgment as to the Solankis' claim of negligent infliction of emotional distress. On the same day, Defendants also filed a motion for partial summary judgment regarding the Solankis' negligence-per-se claim. On January 29, 2008, the Solankis responded to Merchants' motion for partial summary judgment with respect to punitive damages. On February 11, 2008, the Solankis responded to the two remaining partial summary judgment motions. After a hearing on February 15, 2008, the trial court granted partial summary judgment as to the Solankis' claims for punitive damages and negligent

---

[2] Solanki sued in his capacity as an individual, as a wrongful-death beneficiary, and on behalf of his two minor daughters, while Neha Solanki sued in her capacity as a wrongful-death beneficiary.

infliction of emotional distress, but denied partial summary judgment as to their negligence-per-se claim.

¶6. On April 8, 2008, the matter proceeded to trial, at the conclusion of which the jury returned a verdict in favor of Defendants. The verdict of the jury stated: "We, the jury, find for the Defendants, The Merchants Company and Melvin Tyrone Ervin." Accordingly, the trial court entered final judgment in favor of Defendants on April 11, 2008. On April 21, 2008, the Solankis timely filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Defendants filed a response on April 30, 2008. On May 2, 2008, the trial court denied the Solankis' motion. On May 30, 2008, the Solankis timely appealed to this Court.

**ANALYSIS**

¶7. The Solankis raise three issues on appeal, which have been restated and reordered in the analysis below.

**I.      Whether the Trial Court Properly Denied the Solankis' Motion for Directed Verdict and their Request for a Peremptory Instruction.**

¶8. This Court reviews a trial court's grant or denial of a motion for directed verdict de novo. *See, e.g.*, ***Pierce v. Cook***, 992 So. 2d 612, 616 (Miss. 2008); ***Pace v. Fin. Sec. Life***, 608 So. 2d 1135, 1138 (Miss. 1992). A motion for directed verdict tests the legal sufficiency of the plaintiff's evidence. ***Bankston v. Pass Rd. Tire Ctr., Inc.***, 611 So. 2d 998, 1003 (Miss. 1992). This Court has stated that

> [i]n deciding whether a directed verdict . . . should be granted, the trial judge
> is to look solely to the testimony on behalf of the party against whom a
> directed verdict is requested. He will take such testimony as true along with
> all reasonable inferences which can be drawn from that testimony which is

4

favorable to that party, and, if it could support a verdict for that party, the directed verdict should not be given. If reasonable minds might differ as to this question, it becomes a jury issue.

*White v. Thomason*, 310 So. 2d 914, 916-17 (Miss. 1975) (citing *Williams v. Weeks*, 268 So. 2d 340 (Miss. 1972); *Jones v. Phillips*, 263 So. 2d 759 (Miss. 1972)). This Court has also held that "[i]n considering the evidence and all reasonable inferences, the court must determine whether the evidence is so overwhelmingly against [the nonmovant] that no reasonable juror could have found in her favor." *Fox v. Smith*, 594 So. 2d 596, 603 (Miss. 1992) (citations omitted). "[T]his Court considers 'whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.'" *Spotlite Skating Rink, Inc. v. Barnes*, 988 So. 2d 364, 368 (Miss. 2008) (quoting *White v. Stewman*, 932 So. 2d 27, 32 (Miss. 2006)). Accordingly, "[a] directed verdict pursuant to M.R.C.P. 50(a) is not an appropriate means for the disposition of a case so long as questions of fact are raised in the proof at trial." *Id.* (citing *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1361 (Miss. 1990)).

¶9.     Mississippi Rule of Civil Procedure 50(a) states that "[a] motion for a directed verdict shall state the specific grounds therefor." Miss. R. Civ. P. 50(a). The Solankis moved for directed verdict on the grounds that the evidence clearly showed that Ervin had changed lanes when it was not safe to do so, that he had changed lanes and had failed to keep a proper lookout, and that he had not kept his truck under reasonable and proper control. The Solankis argued that the trial court should direct the jury to find in their favor because Ervin had been negligent as a matter of law. The trial court denied the motion.

¶10. As for the Solankis' claim that the trial court should have granted a peremptory instruction, this Court applies the same standard of review as it applies when reviewing the denial of directed verdict or JNOV:

> [T]his Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

*Ala. Great S. R.R. Co. v. Lee*, 826 So. 2d 1232, 1235-36 (2002) (quoting *Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997)).

¶11. The Solankis do not identify the specific instruction that they claim the trial court improperly refused. Based on the record, this Court believes that the peremptory instruction at issue may be instruction P-1[3]. Defendants objected to this instruction, and the trial court refused it. However, the trial court also refused instruction P-10[4], stating that the "[o]bjection to P-28 – P-9 will be refused because the last sentence[5] is almost peremptory," following which, the Solankis' counsel clarified that the trial court was actually referring to

---

[3] Instruction P-1 is reproduced in the Appendix.

[4] Instruction P-10 is reproduced in the Appendix.

[5] Instruction P-10 consists of only one sentence, but the trial court appears to be referring to the last clause of the instruction, beginning with the words "therefore, the Merchants Company is liable . . ." when referencing the last sentence of the instruction.

6

instruction P-10. Therefore, this Court assumes that the Solankis appeal from the trial court's refusal of both instructions P-1 and P-10.

¶12. On appeal, the Solankis argue that the trial court erred in denying their motion for directed verdict and in denying their request for a peremptory instruction on the issue of negligence. They rely on their argument regarding the trial court's denial of their motion for JNOV, which will be addressed more fully below, in Section III. Basically, the Solankis claim that Mississippi law regarding the responsibilities of drivers, the discrepancies in the testimony of Ervin and Defendants' expert, William Messerschmidt, and the fact that the jury was given certain jury instructions all indicate that a directed verdict or peremptory instruction should have been granted. The Solankis also cite this Court's decisions in *Nobles v. Unruh*, 198 So. 2d 245 (Miss. 1967), and *Cipriani v. Miller*, 160 So. 2d 87 (Miss. 1964), and maintain that these cases and others "clearly indicate that if the Appellee changes lanes without first ascertaining that the lane change could be safely made, then the Appellants should be entitled to a directed verdict, or, to a peremptory instruction on the issue of liability."

¶13. Defendants counter that, based on the evidence presented at trial, questions of fact remained for the jury to decide with respect to negligence. Defendants also rely on their argument regarding JNOV, which will be addressed more fully in Section III. Essentially, Defendants argue that substantial evidence was presented at trial demonstrating that Ervin was not negligent and that the trial court properly denied the Solankis' motion for directed verdict. Defendants also maintain that the Solankis' arguments are misplaced and

7

inapplicable. Defendants contend that *Nobles* and *Cipriani* are distinguishable from the facts of this case.

¶14.    We now review the testimony relevant to the issue of negligence to determine whether there is sufficient evidence demonstrating that Ervin was not negligent, or whether the evidence is so overwhelmingly in favor of the Solankis that the trial court should have granted the Solankis' motion for directed verdict or their request for a peremptory instruction. *See, e.g.*, *Bankston*, 611 So. 2d at 1003; *Fox*, 594 So. 2d at 603; (citations omitted); *Lee*, 826 So. 2d at 1235-36 (citation omitted).  The Solankis called Ervin as an adverse witness.  Ervin testified that, prior to the accident, he was driving south on I-220. Ervin stated that, while he was on I-220, he moved from the right lane to the left lane to pass a dump truck that was moving slowly in the right lane.  Ervin testified that he also noticed cars merging onto I-220 from Medgar Evers Boulevard.  After changing lanes, Ervin testified that he noticed that there was traffic ahead of him and that he saw Nilima Solanki's car, but that he did not identify anything as "a danger."  Ervin stated that, initially, Nilima Solanki's car appeared to be moving.  According to Ervin, once he realized that Nilima Solanki's car was not moving, he tried to move back into the right lane, but was unsuccessful because of the traffic.  He also maintained that he applied the brakes at that point.  When pressed, Ervin estimated that he may have applied the brakes before the bridge[6] (i.e., north of the bridge), but stated several times that he was unsure of the location at which he first applied the

---

   [6] Ervin does not state that this is the bridge or overpass on I-220 that passes over Medgar Evers Boulevard.  However, based on the testimony and the exhibits, it appears that this is the bridge to which Ervin refers.

brakes. Ervin testified that he then attempted to avoid colliding with Nilima Solanki's car by going around it on the left side. Ervin stated that, although he tried to avoid hitting her car, ultimately, he could not avoid "swiping her car." He insisted that "I done everything possible that I could to avoid hitting the vehicle by slowing the truck down and even by trying to go around – around the vehicle to keep from hitting the vehicle." Ervin testified that if he had "steered harder to the left," his truck would likely have "jackknifed"[7] and caused more damage and put more lives at risk. When asked if he could have attempted to avoid colliding with Nilima Solanki's car by going around it on the right side, Ervin testified that this was not an option, because other cars were there and it would have meant putting additional lives in danger. Ervin testified that he had not been drinking or taking any drugs at the time of the accident, and that he had not been in a hurry or distracted by anything at the time.

¶15. The Solankis then called James Hannah to provide expert testimony in the field of accident reconstruction. Hannah testified that he began his investigation of this accident by visiting the scene of the accident about a week after it occurred. He stated that he reviewed photographs taken by the police and also took photographs of his own. Hannah found that, based on the evidence, the accident report, and his own investigation, Ervin had a distance of more than 400 feet in which to avoid the accident. Hannah stated that this was the distance between the top of the bridge[8] and the location of Nilima Solanki's car. Hannah

---

[7] The term "jackknife" is not defined in the testimony.

[8] Again, Hannah does not state that this is the bridge or overpass on I-220 that passes over over Medgar Evers Boulevard, but context indicates that it is.

9

testified that he determined that Ervin could have seen the car from the top of the bridge. According to Hannah, Ervin should have been able to slow down much more than he did over a distance of 400 feet. Hannah estimated that Ervin should have been able to come to a full stop in 263 feet, although he admitted that he did not test Ervin's truck. He also testified that Ervin could have slowed down and waited to move back into the right lane. Hannah testified that, based on Ervin's testimony that he had started applying the brakes north of the bridge, he had already perceived and started responding to Nilima Solanki's car at that point. However, on cross-examination, Hannah admitted that no physical evidence showed that Ervin actually started to apply his brakes north of the bridge. Hannah concluded that Ervin did not do everything that he could have done to avoid the accident, because he had enough space to slow down to a speed at which he could have avoided colliding with Nilima Solanki's car. He concluded that Ervin had not been keeping a proper lookout, that he did not have his vehicle under control, and that he did not respond to the stopped car until he was in the immediate area of the car.

¶16.   Defendants called Messerschmidt to provide expert testimony, also in the field of accident reconstruction. Messerschmidt testified that he conducted an investigation of the accident and visited the site of the accident in September 2007. He testified that, based on physical evidence, Nilima Solanki's car was in the left southbound lane of I-220 at the time of the accident, approximately 220 feet south of the bridge. Messerschmidt described the topography of the scene of the accident as follows: "as you go south on 220 and you approach Medgar Evers Boulevard, you start up a hill, and at the crest of that hill is the bridge, and then you start gradually down from the crest of the bridge." Messerschmidt

testified that, based on the readings from the GPS[9] on Ervin's truck, he had been traveling at sixty-seven miles per hour prior to the accident. When asked what he found with respect to Ervin's attempt to avoid the accident, Messerschmidt stated that the tire marks, the forensic mapping conducted by Richard Davis, and the photographs taken by Officer Maurice Kendrick demonstrated that Ervin had moved his truck six feet to the left and into the grass in the median in an attempt to avoid the accident. He added that, based on peer-reviewed, published research regarding the ability of trucks to be steered in either direction, Ervin "was steering pretty much as hard as he could have steered to go to the left" without "jackknifing."

¶17.   He stated that the research indicated that a "stopped vehicle would be easily identifiable as an immediate hazard" from 309 feet away. Messerschmidt stated that, because Ervin had been traveling at sixty-seven miles per hour and because Nilima Solanki's car would have been identifiable as a hazard from 309 feet away, Ervin had 3.14 seconds to react. Messerschmidt testified about research addressing the ability of drivers to perceive a stopped car without context. He stated that there had been no context for Ervin to determine that Nilima Solanki's car was not moving. He also testified that Ervin had been dealing with multiple hazards during the period of time directly preceding the accident because he was driving along a highway with traffic in both lanes, in addition to traffic merging onto the highway. Messerschmidt stated that research has shown that multiple hazards and the lack of context to judge the movement (or lack thereof) of a car causes the time required for perception and for response to increase.

---

[9] Global positioning system.

¶18.    He then testified that, based on research he conducted, the median distance at which a person could physically respond to an object is fifty-nine feet from the point of impact with that object.  However, he found that Ervin had begun steering to the left ninety-eight feet from Nilima Solanki's car.  Thus, Messerschmidt concluded, Ervin had responded faster (in that he responded from a greater distance) than a person whose response distance was in the median range of the research study.  He estimated that it would have taken 250 to 310 feet for Ervin's truck to stop if he had fully engaged the brakes.  Based on Ervin's speed and the fact that he had to move his truck to attempt to avoid the accident, Messerschmidt stated that it would have taken Ervin 116 feet to have avoided the accident by swerving to avoid hitting Solanski's car.  Messerschmidt testified that:

> Mr. Ervin took the best method that was available to him.  It would take between Mr. Hannah's number of 246 to 350 feet to stop.
> It would take 116 feet to change lanes and get out of the way.  He tried to change lanes and get out of the way.  His right-hand lane is blocked.
> The lane is 11 and a half or 11.7 feet wide.  His truck is eight feet wide.
> . . .
> So to stay in 4.5 or so feet of lane [i.e., the distance between Nilima Solanki's car and the right lane] and not hit cars on the right is impossible.  I mean eight is more than four and a half.

¶19.    Considering the evidence relevant to the alleged negligence of Ervin and drawing all reasonable inferences in favor of Defendants, this Court cannot say that the evidence is so overwhelmingly in favor of the Solankis that the trial court improperly denied their motion for directed verdict and their request for a peremptory instruction.  *See, e.g.*, *Bankston*, 611 So. 2d at 1003; *Fox*, 594 So. 2d at 603 (citations omitted); *Lee*, 826 So. 2d at 1235-36 (citation omitted).   Substantial evidence demonstrates that Ervin was not negligent, supporting the jury verdict.  *See, e.g.*, *Lee*, 826 So. 2d at 1235-36.  Therefore, this Court finds

12

that the trial court properly denied the Solankis' motion for directed verdict and their request for a peremptory instruction on the issue of negligence. Because directed verdicts and peremptory instructions test the legal sufficiency of the evidence, the remainder of the parties' arguments will not be addressed, as they are not relevant to the sufficiency of the evidence.

## II.    Whether the Trial Court Properly Gave Jury Instructions 20 and 22.

¶20.    When reviewing a challenge to a jury instruction, this Court asks whether the instruction at issue contains a correct statement of the law and whether the instruction is warranted by the evidence. *See, e.g.*, ***Church v. Massey***, 697 So. 2d 407, 410 (Miss. 1997) (citation omitted). "A party has a right to have jury instructions on all material issues presented in the pleadings or evidence." ***Glorioso v. YMCA***, 556 So. 2d 193, 195 (Miss. 1989) (citing ***Barkley v. Miller Transporters, Inc.***, 450 So. 2d 416 (Miss. 1984); ***Alley v. Praschak Mach. Co.***, 366 So. 2d 661 (Miss. 1979)). When this Court reviews a claim of trial-court error in granting or denying jury instructions, all of the jury instructions are reviewed as a whole, and no instruction is read in isolation. *See, e.g.*, ***Richardson v. Norfolk S. Ry. Co.***, 923 So. 2d 1002, 1010 (Miss. 2006) (citations omitted); ***Burton v. Barnett***, 615 So. 2d 580, 583 (Miss. 1993) (citations omitted). "Defects in specific instructions do not require reversal 'where all instructions taken as a whole fairly – although not perfectly – announce the applicable primary rules of law.'" ***Burton***, 615 So. 2d at 583 (citations omitted).

¶21.    Furthermore, this Court has held that "when a jury instruction is offered at trial, it is the duty of the opposing party, in order to preserve this point for appeal, to state a

13

contemporaneous objection in specific terms so that the trial court has an opportunity to correct any mistake." ***Young v. Robinson***, 538 So. 2d 781, 783 (Miss. 1989) (citations omitted). "[O]n appeal a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial." ***Id.*** (citations omitted).

¶22. The Solankis contend that the trial court erred in granting jury instructions 20 and 22. Instruction 20 is modeled after Mississippi Code Section 63-3-903, which states, in relevant part:

> (1) No person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of any highway outside of a business or residence district when it is practical to stop, park or so leave such vehicle off such part of said highway. . . .
> (2) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

Miss. Code Ann. § 63-3-903(1)-(2) (Rev. 2004). Instruction 20 states:

> The Court instructs the jury that according to Mississippi law no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of any highway, unless it is impossible to avoid stopping in the roadway.
> Therefore, if you find from a preponderance of the evidence in this case that the decedent, Nilima Solanki, allowed her vehicle to stop in a lane of travel on the highway when it was possible or reasonably practicable for her to steer her vehicle onto the shoulder of the highway, then the Court instructs the jury that such acts constitute negligence on behalf of the decedent, and if you find from a preponderance of the evidence that such negligence was the sole proximate cause of the accident, then it is your sworn duty to return a verdict for Melvin Ervin and The Merchants Company.
> If you find that such negligence of the decedent Nilima Solanki was a proximate contributing cause of the accident and that the negligence of Melvin Ervin was also a proximate contributing cause of the accident, then it is your sworn duty to decide the amount you would have awarded for her death, if any, and then reduce that amount by the percentage of Nilima Solanki's negligence.

¶23. The Solankis' counsel objected to instruction 20 (then instruction D-8) on the grounds that it was "misleading, confusing, and I don't think it's based upon testimony in the court." Defendants argued that the instruction was based on Mississippi Code Section 63-3-903 and that it was applicable to the facts in this case. The trial court granted the instruction, informing the Solankis' counsel that "[y]ou will be completely at liberty to argue that stop, park are affirmative actions and that she's certainly not guilty of affirmatively stopping and parking."

¶24. On appeal, the Solankis argue that the evidence demonstrated that it was not reasonably practicable for Nilima Solanki to move her car off I-220. They further assert that Defendants failed to demonstrate "that it was reasonably practical for Decedent Nilima Solanki to pull her motor vehicle off of the highway" after it stalled on I-220 and that it was clear that it was not reasonably practical for her to do so. As if by way of explanation, the Solankis claim in their appellate brief that "[a] man may have figured out how to not get stopped in the roadway but many women, when given mechanical problems, do not know what to do." The Solankis quote testimony regarding Sidharth Solanki's discussion over the phone with Nilima Solanki before the accident, presumably to demonstrate that it was not reasonably practicable for Nilima Solanki to move her car off the highway.

¶25. Defendants assert that instruction 20 accurately reflects the law as set out in Section 63-3-903(1)-(2) and that the instruction includes the term "reasonably practicable." Defendants point out that whether it was reasonably practicable for Nilima Solanki to steer her car off the highway is a question of fact for the jury. Defendants also claim that the issue was properly submitted to the jury along with this instruction, which provided proper

15

guidance for the jury. Defendants further contend that the Solankis failed to preserve this issue for appeal by making a general objection to the instruction.

¶26. This Court finds that the trial court properly granted instruction 20 because it contains a correct statement of the law and was warranted by the evidence. *See Massey*, 697 So. 2d at 410 (citation omitted). The language in instruction 20 is not identical to that in Section 63-3-903(1). Instruction 20 begins by stating that "no person shall stop, park or leave standing any vehicle . . . upon the . . . highway, unless it is *impossible* to avoid stopping in the roadway." (Emphasis added.) Section 63-3-903(1) states, in relevant part, that "[n]o person shall stop, park or leave standing any vehicle . . . upon the . . . highway . . . when it is *practical* to stop, park or so leave such vehicle off . . . said highway." Miss. Code Ann. § 63-3-903(1) (Rev. 2004) (emphasis added). Section 63-3-903(2) states, in relevant part that "[t]his section shall not apply to the driver of any vehicle which is disabled while on the . . . highway in such manner and to such extent that it is *impossible* to avoid stopping and temporarily leaving such disabled vehicle in such position." Miss. Code Ann. § 63-3-903(2) (emphasis added). Notably, instruction 20 also instructs the jury that, "if you find from a preponderance of the evidence in this case that the decedent, Nilima Solanki, allowed her vehicle to stop in a lane of travel on the highway when it was *possible or reasonably practicable* for her to steer her vehicle onto the shoulder of the highway, then the Court instructs the jury that such acts constitute negligence on behalf of the decedent." (Emphasis added.) Thus, this Court finds that instruction 20 fairly announces the applicable rule of law in that it includes the term "reasonably practicable" (rather than "practical"), even though it also includes the term "impossible." *See Burton*, 615 So. 2d at 583 (citations omitted).

16

¶27. Contrary to the Solankis' assertion that instruction 20 is not supported by the evidence presented by Defendants, this Court finds that there was an evidentiary basis for instruction 20. Solanki testified about his phone conversation with Nilima Solanki, during which she told him that she had been driving at seventy miles per hour when her car broke down and that her car was stopped by the yellow line on I-220 with the emergency lights activated. Solanki also testified that he did not know why his wife's car was stopped on the highway, as opposed to the median. Hannah admitted that, if Nilima Solanki had been driving at seventy miles per hour when her car stalled, then the car would have rolled a significant distance before coming to a complete stop. Hannah also testified that there was no physical barrier preventing Nilima Solanki's car from being moved off the highway and that he was not certain of the angle at which her car was pointed when it stopped. Messerschmidt testified that the evidence showed that Nilima Solanki's car had rolled to a stop and was positioned parallel to, and to the right of, the yellow line on I-220.

¶28. Thus, the testimony regarding the circumstances under which Nilima Solanki found herself prior to the accident established an evidentiary basis for instruction 20. The testimony also created a question of fact as to her ability to move her car off the highway. Both parties recognize that, ordinarily, such a question of fact should be "submitted to the jury on proper instructions." *Stong v. Freeman Truck Line, Inc.*, 456 So. 2d 698, 708 (Miss. 1984). Based on the testimony, this question of fact was not "so clear that reasonable minds could not differ." *Id.* (citations omitted). Whether Defendants failed to demonstrate "that it was reasonably practical for Decedent Nilima Solanki to pull her motor vehicle off of the highway," as the Solankis claim on appeal, was for the jury to determine. Therefore,

17

this Court concludes that the question was properly submitted to the jury, along with instruction 20. *Id.* (citations omitted). Because we conclude that instruction 20 was a proper reflection of the law and supported by the evidence, the remainder of the parties' arguments will not be addressed.

¶29. Instruction 22 states:

> You are instructed that Mississippi law provides for comparative negligence, that is, more than one party may be responsible for causing a person's injury or death.
>
> Further, you are instructed that while operating her vehicle, the decedent, Nilima Solanki, had a duty to use reasonable care in the interest of safety of others on the roadway that a person of ordinary intelligence would exercise under the same or similar circumstances. If you find that Nilima Solanki did not exercise such reasonable care by failing to steer her vehicle onto the shoulder of the roadway as her vehicle began to stall and/or by talking on her cell phone instead of exiting the vehicle in order to move to a place of safety after her vehicle stopped, and if you further find that her failure to use reasonable care proximately caused or contributed to the accident or her own death, then it is your sworn duty to decide the amount you would have awarded for such death, if any, and then reduce your verdict by the percentage of Nilima Solanki's own negligence.
>
> Furthermore, should you find that Nilima Solanki's own negligence was the sole proximate cause of the accident, then you shall return a verdict in favor of Melvin Ervin and The Merchants Company.

¶30. With respect to instruction 22 (then instruction D-11), the Solankis' counsel objected on the grounds of "confusion, misleading, and not a true statement of the law, and it's not supported by the facts in evidence, and there's no evidence to support the instruction. It's based on pure speculation, conjecture, and no proof of negligence on her part." The trial court granted the instruction.

¶31. The Solankis maintain on appeal that instruction 22 is extremely confusing and misleading, in part because "[s]aid [i]nstruction lays blame on Nilima Solanki [as] if she

18

talked on her cell phone instead of exiting, without taking into consideration that a mother would not leave her child in the car and just try saving herself." The Solankis also rely on the fact that the trial judge granted instruction 23 (then instruction P-30) – the Solankis' comparative negligence instruction – "reluctantly" because he did not believe that there was evidence of Nilima Solanki's negligence. Instruction 23 states:

> If you find from a preponderance of the evidence in this case that:
> 1. Melvin Tyrone Ervin was negligent but also,
> 2. That Nilima Solanki, Deceased, was negligent;
> 3. That the negligence of both Melvin Tyrone Ervin and Nilima Solanki, Deceased, were proximate, contributing causes of the accident in this case, and
> 4. That Nilima Solanki and the Plaintiffs sustained injuries and damages caused by the combined negligence of Melvin Tyrone Ervin and Nilima Solanki, Deceased, then you will, in arriving at your verdict, first determine that sum of money which will fairly and adequately compensate the Plaintiffs, for said injuries and damages, and then reduce this sum in proportion to the causal negligence of Nilima Solanki, Deceased, using the following method . . . .

When this instruction was discussed at the trial level, the trial court stated: "This is [a] comparative negligence statute, and I expected it to come from the defense, but I don't understand what negligence is there of the deceased?" Defendants' counsel then argued for the instruction, stating that there was evidence that Nilima Solanki had an opportunity to steer her car into the shoulder of I-220 and that there was testimony that she had sat in her car for one-and-a-half minutes after her car had stopped. The Solankis' counsel then attempted to withdraw the instruction. The trial judge initially stated that he would not rule on the instruction at that time. However, after hearing further argument from Defendants' counsel, the trial court decided to give the instruction "out of an abundance of precaution."

¶32. The Solankis end their argument on appeal by conclusorily stating that:

19

One can clearly see that the Court did not see any negligence on the part of Nilima Solanki, and for the jury to have assessed her with 100% of the negligence evinces bias or prejudice on the part of the jury, or, shows that they were just confused as to what the law was and as to how they were supposed to rule.

¶33. Defendants counter that the Solankis' claim that the jury found Nilima Solanki one hundred percent negligent is incorrect. Defendants also contend that substantial evidence demonstrated Nilima Solanki's negligence. Defendants further argue that the Solankis waived any objection to this instruction because they requested, and were granted, their own comparative-negligence instruction – instruction 23.

¶34. Assuming arguendo that the Solankis can appeal this instruction (despite submitting their own comparative-negligence instruction), this Court finds that it contains a correct statement of the law and is warranted by the evidence. *See Massey*, 697 So. 2d at 410 (citation omitted). Mississippi is a comparative-negligence state. *See, e.g.*, *Blackmon v. Payne*, 510 So. 2d 483, 486 (Miss. 1987) (citing *Evans v. Journeay*, 488 So. 2d 797, 799 (Miss. 1986); *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 664 (Miss. 1985); Miss. Code Ann. § 11-7-15 (Rev. 2004)). Also, instruction 22 is warranted by the evidence. There was testimony, reviewed above, regarding the location and positioning of Nilima Solanki's car on I-220, which is relevant to the issue of comparative negligence. Don Williams testified that he had observed Nilima Solanki sitting in the driver's seat of her car, with one leg on the highway, on her cell phone for one minute to one-and-a-half minutes. As stated above, Solanki also testified about his phone conversation with Nilima Solanki before the accident, although he stated that they had spoken on the phone for no longer than twenty seconds before the accident. Thus, the testimony provided an evidentiary basis for instruction 22.

20

Therefore, this Court finds that instruction 22 was properly given. *See Richardson*, 923 So. 2d at 1010 (citations omitted). Because we conclude that instruction 22 was a proper reflection of the law and supported by the evidence, the remainder of the parties' arguments will not be addressed.

**III.    Whether the Trial Court Properly Denied the Solankis' Motion for Judgment Notwithstanding the Verdict.**

¶35.    This Court reviews a trial court's denial of a motion for JNOV de novo. *See, e.g., U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 964 (Miss. 2008) (citing *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 948 (Miss. 2008)). This Court has held that:

> In deciding a motion for judgment notwithstanding the verdict, the trial court must consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom. The trial court should consider the evidence offered by the non-moving party and any uncontradicted evidence offered by the moving party. If the evidence thus considered is sufficient to support a verdict in favor of the non-moving party, the motion for j.n.o.v. must be denied.

*Corley v. Evans*, 835 So. 2d 30, 36 (Miss. 2003) (quoting *Goodwin v. Derryberry Co.*, 553 So. 2d 40, 42 (Miss. 1989)). This Court has stated that "[a] motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict." *Martin*, 998 So. 2d at 964 (citing *Adcock*, 981 So. 2d at 948); *see also Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 961 (Miss. 1999) (citing *Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997)). "Substantial evidence" has been defined as "information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions." *Martin*, 998 So. 2d at 964 (citing

*Adcock*, 981 So. 2d at 948-49); *see also Smith v. Averill*, 722 So. 2d 606, 613 (Miss. 1998) (citing *Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So. 2d 324, 326 (Miss. 1988)). In reviewing the trial court's denial of a JNOV, this Court must "consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence." *Spotlite Skating Rink, Inc. v. Barnes*, 988 So. 2d 364, 368 (Miss. 2008) (quoting *Steele*, 697 So. 2d at 376); *see also Miss. Transp. Comm'n v. SCI, Inc.*, 717 So. 2d 332, 338 (Miss. 1998) (citing *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 252 (Miss. 1993), *superseded by statute on other grounds*, Miss. Code Ann. § 11-1-63(f)(ii), *as recognized in Wolf v. Stanley Works*, 757 So. 2d 316, 321 (Miss. 2000)). "If the facts are so overwhelmingly in favor of the appellant that reasonable and fair-minded jurors could not have arrived at a contrary verdict, then this Court must reverse and render." *SCI, Inc.*, 717 So. 2d at 338 (citing *Prestage*, 617 So. 2d at 252); *see also Kimmins Indus. Serv. Corp.*, 743 So. 2d at 960 (citation omitted). "On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required." *SCI, Inc.*, 717 So. 2d at 338 (citing *Prestage*, 617 So. 2d at 252); *see also Kimmins Indus. Serv. Corp.*, 743 So. 2d at 960 (citation omitted).

¶36.    The Solankis argue on appeal that the trial court should have granted their motion for JNOV because the verdict was against the overwhelming weight of the evidence. We note that the Solankis provide the wrong standard for determining whether JNOV should be granted. As stated above, a motion for JNOV challenges the legal sufficiency of the evidence

– not the overwhelming weight of the evidence. *See, e.g.*, **Martin**, 998 So. 2d at 964 (citation omitted). The Solankis' argument is divided into three sections.

¶37. In section A, the Solankis discuss Mississippi Code Section 63-3-603, which requires drivers to ascertain whether a lane change can be made safely before changing lanes. Miss. Code Ann. § 63-3-603 (Rev. 2004). They also mention several cases that cite or apply Section 63-3-603. They next quote the jury instruction given by the trial court stating that drivers may not change lanes until they have ascertained that they can safely do so. The Solankis then perfunctorily state that "[e]ven if we did not have the statute, Appellee Ervin would be guilty of common law negligence, because it is clearly negligent to change lanes at a time when one does not know whether it is safe to do so or not." The Solankis do not include any facts from this case in section A to support their contention that JNOV was improperly denied and make no attempt to demonstrate how the facts in the cases cited are analogous to the facts in this case.

¶38. In section B, the Solankis cite **White v. Miller**, 513 So. 2d 600 (Miss. 1987), for the proposition that "rear-enders," that is, drivers of cars that collide with cars in front of them, must have their car under control, keep a proper lookout, and drive at a sufficient speed and at a sufficient distance to prevent a collision if the car in front suddenly stops. They next quote the jury instruction given by the trial court stating that, under Mississippi law, drivers have a duty to exercise ordinary care to keep their vehicles under reasonable control, drive at a reasonable rate of speed, keep a reasonable and proper lookout for other vehicles, and anticipate the presence of other vehicles in order to avoid collisions. The Solankis then conclusorily state that "[a]ppellee Ervin certainly failed in all of the above-mentioned

23

categories." Again, the Solankis include no facts from this case in section B to show that JNOV should have been granted and make no attempt to demonstrate how the facts in the cases cited are analogous to the facts in this case.

¶39. Although section C is entitled "Argument applying the facts of the present case to Mississippi Law in showing that the jury verdict was against the overwhelming weight of the evidence in this case," it contains no argument, and, as stated above, cites the wrong standard for a motion for JNOV. The Solankis state that "[a]ppellee Ervin clearly made a lane change at a time when he did not first ascertain that the lane change could be safely made." For support, the Solankis reference the discrepancies in Ervin's deposition and trial testimony and assert that the testimony from Ervin "clearly and unequivocally make[s] him negligent and totally at fault for the subject accident." The Solankis further state that Ervin "would even be totally at fault by his expert's version of when Appellee Ervin changed lanes." The Solankis recount at length what they allege to be three different versions of the facts provided by Ervin, followed by the version provided by Messerschmidt. Then, they argue that three jury instructions should not have been given by the trial court. At the close of the discussion of the three jury instructions, the Solankis state:

> One can clearly see that the Court did not see any negligence on the part of Nilima Solanki, and for the jury to have assessed her with 100% of the negligence evinces bias or prejudice on the part of the jury, or, shows that they were just confused as to what the law was and as to how they were supposed to rule. In any event, Appellees' Jury Instruction regarding "parking in a roadway," which was the Court's Jury Instruction No. 22, clearly confused and mislead the Jury.
> Also, the Appellants are from India, and the Jury could have been prejudice [sic] for this reason, but there was no basis for a verdict totally for the Appellees under these facts.

24

¶40. Defendants counter that JNOV was properly denied. Like the Solankis, Defendants misstate the proper standard applicable to motions for JNOV. Defendants contend that substantial testimony was presented at trial by Ervin and Messerschmidt that Ervin had kept a reasonable lookout when changing lanes and that he had made his best efforts to avoid colliding with Nilima Solanki's car. Defendants assert that this testimony was sufficient to support the jury verdict. In response to the Solankis' discussion of Section 63-3-603, Defendants argue that the plain language of Section 63-3-603 indicates that it is inapplicable to the facts in this case. Defendants further claim that, even if Section 63-3-603 is applicable, this does not alter the fact that Defendants presented substantial evidence to show that Ervin was not negligent. Likewise, Defendants argue that the Solankis' discussion of the law regarding "rear-enders" does not change the fact that Defendants presented substantial evidence to show that Ervin was not negligent. As for the Solankis' discussion of the alleged three versions of Ervin's testimony and Messerschmidt's testimony, Defendants contend that the Solankis ignore the fact that the jury is responsible for weighing discrepancies in the evidence and for evaluating the credibility of witnesses. Defendants further point out that, when reviewing a trial court's decision regarding JNOV, the evidence is to be viewed in the light most favorable to the appellee, and that all reasonable inferences must be drawn in the appellee's favor. Thus, Defendants argue, the Solankis improperly ask this Court to reevaluate the credibility of Ervin and Messerschmidt. Defendants then discuss the evidence presented at trial demonstrating that Nilima Solanki was negligent.

¶41. Based on the testimony presented at trial, which this Court reviewed in Section I, this Court finds that JNOV was properly denied. At trial, Ervin and Messerschmidt testified that

25

Ervin's conduct before the accident was not negligent. Ervin maintained that he did all he could do to avoid an accident. Messerschmidt testified that Ervin had begun steering to avoid an accident ninety-eight feet away from Nilima Solanki's car. He stated that the median distance at which someone could respond to an object is fifty-nine feet from the point of impact with the object. He also testified that it would have taken 250 to 310 feet for the truck to stop and 116 feet for him to avoid an accident. He concluded that Ervin "took the best method that was available to him." The jury heard all the evidence presented. The jury ultimately found that Ervin was not negligent and that Defendants, therefore, were not liable to the Solankis. The jury determines the weight and credibility of witnesses. *See, e.g.*, *Nelson v. State*, No. 2008-KA-00299-SCT, 2009 WL 1085485, at \*17 (Miss. Apr. 23, 2009) (citing *Moore v. State*, 933 So. 2d 910, 922 (Miss. 2006)) ("The jury determines the weight and credibility of witness testimony."); *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980) ("This Court has in numerous cases, too many to mention, said that when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony."). This Court finds that the testimony of Ervin and Messerschmidt is legally sufficient to support the jury verdict.

¶42. The Solankis fail to make a coherent argument as to why the testimony was insufficient to support the verdict and why, therefore, JNOV should have been granted. The issues raised by the Solankis are completely irrelevant to the determination of whether sufficient evidence was presented at trial to support the jury's verdict. The Solankis set out the law regarding changing lanes and the responsibilities of individuals driving cars behind other cars. While this may be relevant to their theory of the case, and while it would have

26

been helpful in trying to convince the jury to find in their favor, this law is irrelevant to the question of whether there is sufficient evidence to support the jury verdict. The Solankis fail to connect the law to the facts of this case in order to illustrate how the testimony of Ervin and Messerschmidt was insufficient to support the verdict. The fact that Mississippi law imposes certain responsibilities on drivers does not, in and of itself, indicate that JNOV should have been granted in this case. Likewise, the fact that this Court has found certain drivers to be negligent in the cases cited by the Solankis does not necessarily mean that JNOV should have been granted in this case. The Solankis' discussion of the three jury instructions also is irrelevant to the question of whether the evidence presented at trial was sufficient to support the jury verdict.

¶43.    Furthermore, Defendants are correct in arguing that the Solankis improperly ask this Court to reevaluate the weight and credibility of the testimony provided by Ervin and Messerschmidt. The jury heard the testimony presented by Ervin and Messerschmidt. The jury also heard the Solankis' attempts to impeach Ervin with his deposition testimony at trial. As stated above, the jury is responsible for weighing the evidence and determining the credibility of witnesses. *See, e.g.*, *Nelson*, 2009 WL 1085485, at *17 (citation omitted); *Gathright v. State*, 380 So. 2d at 1278. Thus, the jury was entitled to credit the testimony of Ervin and Messerschmidt and not that of Hannah. Moreover, it is well established that, when reviewing trial court decisions regarding JNOV, the evidence is to be considered in the light most favorable to the appellee. *See, e.g.*, *Spotlite Skating Rink, Inc.*, 988 So. 2d at 368 (citation omitted).

¶44.    Lastly, we note that the Solankis are mistaken in claiming that the jury found Nilima Solanki one hundred percent negligent.  The jury found that Ervin was not negligent and made no findings as to whether or not Nilima Solanki was negligent.  The jury may have concluded that she was negligent, but it also may have found that the Solankis simply failed to meet their burden of proving by a preponderance of the evidence that Ervin was negligent.  For the same reason, we do not address Defendants' assertion that Nilima Solanki was negligent, because it is irrelevant to whether sufficient evidence showed that Ervin was not negligent to support the jury verdict in favor of Defendants.

¶45.    After a de novo review of the record, this Court concludes that the trial court properly denied the Solankis' motion for JNOV.  This Court finds that the testimony of Ervin and Messerschmidt constitutes substantial evidence because it is "of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions."  *See, e.g.*, **Adcock**, 981 So. 2d at 948-49 (citation omitted).  This Court cannot say that "the facts are so overwhelmingly in favor of the appellant that reasonable and fair-minded jurors could not have arrived at a contrary verdict."  *See e.g.*, **SCI, Inc.**, 717 So. 2d at 338 (citation omitted).  Taking the evidence "in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence," this Court concludes that JNOV was properly denied.  *See, e.g.*, **Spotlite Skating Rink, Inc.**, 988 So. 2d at 368 (citation omitted).

**IV.    Whether the Trial Court Properly Denied the Solankis' Motion for a New Trial.**

¶46.    This Court reviews a trial court's grant or denial of a motion for a new trial for an abuse of discretion. *See, e.g.*, **Pierce v. Cook**, 992 So. 2d 612, 620 (Miss. 2008); **Allstate Ins.**

*Co. v. McGory*, 697 So. 2d 1171, 1174 (Miss. 1997). This Court has held that "a new trial becomes appropriate when a trial court determines that error within the trial mechanism itself has caused a legally incorrect or unjust verdict to be rendered." *White v. Stewman*, 932 So. 2d 27, 33 (Miss. 2006). This Court further stated in *Stewman*:

> In ordering a new trial, the trial court makes a determination that the jury verdict is in error, and that due to mistakes made in conducting the trial, mistakes made in applying the law, or due to a jury verdict that is against the great weight of the evidence, a new trial is necessary.

*Id.* at 33. This Court also has held that:

> A new trial may be granted in a number of circumstances, such as when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice.

*Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n*, 560 So. 2d 129, 132 (Miss. 1989) (citing *Clayton v. Thompson*, 475 So. 2d 439, 443 (Miss. 1985)). "Throughout the entire history of jury trials, the courts have exercised a supervisory power over them, and have granted new trials whenever convinced, from the evidence, that the jury has been partial or prejudiced, or has not responded to reason upon the evidence produced." *Stewman*, 932 So. 2d at 33.

¶47.   The Solankis' argument regarding their motion for a new trial is the same as their argument regarding their motion for JNOV, which is summarized above in Section III, and which includes a claim that the jury was confused, biased, or prejudiced. The Solankis do not separately address the trial court's denial of their motion for a new trial on appeal. The argument the Solankis presented to the trial court in their motion for JNOV or, in the alternative, a new trial, includes a section that is similar to the argument they present on appeal. We note that in their motion for JNOV or, in the alternative, a new trial, the Solankis

29

also claim that the trial court should have granted a directed verdict; that the trial court should have granted a peremptory instruction in their favor; that the trial court improperly excluded Hannah's supplemental report, video, and photographs; that the trial court should not have granted jury instructions D-6, D-8, D-11, D-4a, D-7a, and D-2; that the trial court erred in denying the Solankis' motion to designate an expert out of time; that the trial court should have granted jury instruction P-7 and P-3; that the trial court improperly granted partial summary judgment as to the Solankis' negligent-infliction-of-emotional-distress claim; and that the trial court erred in granting partial summary judgment as to punitive damages. For several of these alleged points of error, the Solankis only include a heading and do not include any substantive arguments in support. Moreover, the Solankis fail to demonstrate how these supposed errors resulted in a jury verdict that is against the overwhelming weight of the evidence, unjust, or contrary to the law. Therefore, this Court will not address these additional arguments.

¶48. Defendants contend that the trial court properly denied the Solankis' motion for a new trial, arguing that there was no error in the trial that resulted in a legally incorrect or unjust verdict. Defendants assert that there is no indication that the jury was confused by the jury instructions or that they reached a verdict based on bias, passion, or prejudice.

¶49. Based on the evidence relevant to the issue of negligence, which this Court reviewed in Section I, this Court cannot find that the trial court abused its discretion in denying the Solankis' motion for a new trial. The Solankis fail to identify an error within the trial mechanism that resulted in a jury verdict that is against the overwhelming weight of the evidence, unjust, or contrary to the law. They also fail to demonstrate how the jury verdict

warrants a new trial. Once again, the jury is the sole judge of the credibility of witnesses and the weight of the evidence. *See, e.g.*, **Nelson**, 2009 WL 1085485, at *17 (citation omitted); **Gathright**, 380 So. 2d at 1278. Although the Solankis claim that the jury was confused by the jury instructions, they provide no support for this claim. The Solankis also claim that the jury was biased or prejudiced against them. While claims of prejudice should not cavalierly be dismissed, the record in this case is devoid of any evidence to support the contention that the verdict of the jury in the instant case was the result of bias, passion, and prejudice. This Court recognizes that the Solankis are Indian and that Nilima and Sidharth Solanki immigrated to this country. We note that testimony about the Solankis' country of origin, their immigration to the United States, their life here, and their plans for the future, including returning to India in their retirement, was introduced by their counsel during the direct examination of Sidharth Solanki.[10] However, the Solankis did not identify (and this Court cannot find) anything in the record to indicate that the jury was prejudiced against the Solankis because of their race or national origin.

¶50. As stated above, the Solankis set out the law regarding changing lanes and the responsibilities of individuals driving cars behind other cars. This is irrelevant to the question of whether there was an error in the trial mechanism. The Solankis' discussion of the three jury instructions could be relevant to the question of whether there was an error in the trial mechanism that caused a jury verdict that is against the overwhelming weight of the evidence, unjust, or contrary to the law. However, the Solankis fail to explain how the jury

---

[10] In addition, plaintiffs' counsel stated during his opening statement that the Solankis were from India.

31

instructions caused the jury to reach a verdict that warranted a new trial. Therefore, this Court finds that the trial court properly denied the Solankis' motion for a new trial.

**CONCLUSION**

¶51. This Court concludes that the trial court did not err in denying the Solankis' motion for directed verdict, in giving jury instructions 20 and 22, or in denying the Solankis' motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Therefore, the trial court's denial of directed verdict, giving of jury instructions 20 and 22, and denial of judgment notwithstanding the verdict and a new trial are affirmed.

¶52. **AFFIRMED.**

**CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**

32

**Appendix**

Instruction P-1

        The Court instructs the jury that you shall find for the plaintiffs against the defendants, The Merchants Company and Melvin Tyrone Ervin, with the form of your verdict being as follows:

> **"We, the jury, find for the plaintiffs and against the defendants, the Merchants Company and Melvin Tyrone Ervin and assess their damages in the sum of $_____."**

and you will write your verdict upon a separate piece of paper.

Instruction P-10

The Court instructs the jury that Melvin Tyrone Ervin, at the time and place of the accident in question, was an employee of The Merchants Company and that he was working and acting within the course and scope of his employment with The Merchants Company and was acting in furtherance of the company's business and was therefore at all time in question an agent of The Merchants Company, and therefore, The Merchants Company is liable to the Plaintiff for the injuries and death of Nilima Solanki which were established by a preponderance of the evidence to be the proximate result of the negligence, if any, of Melvin Tyrone Ervin.

33