759 So.2d 526 (2000)
Verna S. O'FLYNN and William W. Hatten, Appellants,
v.
OWENS-CORNING FIBERGLAS, Appellee.
No. 97-CA-01229-COA.
Court of Appeals of Mississippi.
May 2, 2000.
*529 James K. Dukes, Hattiesburg, Attorney for Appellant.
Ronald G. Peresich, Mary A. Nichols, Biloxi, Attorneys for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
IRVING, J., for the Court:
¶ 1. Verna S. O'Flynn (O'Flynn), individually and as administratrix of the estate of John W. O'Flynn, and William W. Hatten (Hatten), on behalf of Fannie Rue Hatten and the estate of Norman Eugene Hatten, filed suit in June and August of 1990 bringing claims against some fourteen defendants and their predecessor corporations. O'Flynn and Hatten alleged personal injury to the separate decedents, John W. O'Flynn and Norman Eugene Hatten, due to exposure to asbestos during their respective employment at the Hercules plant. O'Flynn and Hatten's claims were premised on theories of negligence and strict liability. All defendants except Owens Corning Fiberglas Corporation (OCF) settled or were dismissed by O'Flynn and Hatten prior to the case being submitted to the jury, with the last of these, Fibreboard Corporation, reaching settlement agreement after jury selection but before opening statements to the jury. This case was tried before the Circuit Court of Forrest County, the Honorable Harvey Buck presiding, from April 30, 1997 to May 8, 1997. The jury returned verdicts for the defense as to all claims on both the O'Flynn and Hatten cases, finding no liability. O'Flynn and Hatten filed a motion for new trial on June 3, 1997. Following oral argument on O'Flynn and Hatten's motion for new trial, the trial court entered an order denying relief on September 8, 1997. On October 6, 1997, O'Flynn and Hatten filed a notice of appeal, assigning numerous errors, which we quote verbatim from their brief:
I. IN A CASE IN WHICH THE PLAINTIFF PROCEEDS ON A THEORY OF PRODUCTS LIABILITY ALLEGING INJURY CAUSED BY AN UNREASONABLY DANGEROUS PRODUCT, IS IT ERROR FOR THE TRIAL COURT TO FAIL TO INSTRUCT THE JURY AS TO THE DEFINITION OF AN "UNREASONABLY DANGEROUS PRODUCT?"
II. IN A CASE IN WHICH THE JURY BECOMES AWARE THAT SOME DEFENDANTS *530 HAVE SETTLED OR OTHERWISE BEEN DISMISSED FROM THE CASE, INCLUDING A DEFENDANT WHO PARTICIPATED IN JURY SELECTION, IS IT ERROR FOR THE TRIAL COURT TO REFUSE TO GIVE A CAUTIONARY INSTRUCTION TO THE JURY REGARDING CONSIDERATION OF SETTLEMENT IN THEIR DELIBERATION?
III. IN A CASE IN WHICH THE PLAINTIFF PROCEEDS ON BOTH STRICT PRODUCTS LIABILITY AND NEGLIGENCE, IS IT ERROR FOR THE TRIAL COURT TO INSTRUCT THE JURY THAT THE DEFENDANT IS HELD TO A STANDARD OF REASONABLENESS AND FAIL TO STATE THAT THE REASONABLENESS IS NOT A DEFENSE TO STRICT LIABILITY?
IV. WERE THE JURY INSTRUCTIONS SO CONFUSING AND INADEQUATE AS TO CONSTITUTE REVERSIBLE ERROR DUE TO THE TRIAL COURT'S FAILURE TO PROVIDE ADEQUATE GENERAL INSTRUCTIONS AND PRESENTATION OF THE INSTRUCTIONS IN A SEQUENCE THAT DID NOT FAIRLY AND ADEQUATELY IMPART THE LAW.
V. IN A STRICT PRODUCT LIABILITY CASE IN WHICH A DEFENDANT MANUFACTURER IS PRESUMED TO KNOW OF SCIENTIFIC ADVANCES PERTAINING TO THE PRODUCT, IT IS ERROR FOR THE COURT TO EXCLUDE EVIDENCE OF WHAT SIMILARLY SITUATED MANUFACTURERS, PARTICULARLY ONE WHICH MADE AN IDENTICAL PRODUCT, ACTUALLY KNEW REGARDING THE DANGERS OF THE PRODUCT.
Finding no error, we affirm.

FACTS
¶ 2. O'Flynn and Hatten claim that both decedents died of lung conditions, John W. O'Flynn of lung cancer and asbestosis, and Norman Eugene Hatten of respiratory insufficiency, one of the causes of which was asbestosis and asbestos-induced pleural disease, which were proximately caused by exposure to asbestos, containing Kaylo, manufactured by OCF. OCF manufactured Kaylo from 1958 until 1972. John W. O'Flynn worked at Hercules from 1946 to 1985 as a lagger, lagger foreman and supervisor, and died on October 30, 1989. Norman Eugene Hatten worked at Hercules from 1935 to 1976 as an asbestos man/helper, lagger and lagger boss, and died on June 25, 1989. Decedents were allegedly exposed to Kaylo over part of their respective forty-plus year employment at the Hercules facility.

ANALYSIS OF ISSUES PRESENTED

I. Failure to Instruct the Jury as to the Definition of "Unreasonably Dangerous"
¶ 3. O'Flynn and Hatten argue that because this is a products liability case in which they are required to prove that OCF's product is, in fact, unreasonably dangerous, an instruction defining "unreasonably dangerous" was essential to allow the jury to properly consider their theory of the case. They contend that by failing to offer any guidance to the jury on this crucial issue, the trial court erred.
¶ 4. The Mississippi Supreme Court adopted the doctrine of strict liability found in the State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss.1966) in State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss.1966). Section 402A states:
Special Liability of Seller of Product for Physical Harm to User or Consumer

*531 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in condition in which it is sold....
Scordino v. Hopeman Bros., Inc., 662 So.2d 640, 642 (Miss.1995) (quoting State Stove Mfg., 189 So.2d at 118) (quoting Restatement (Second) of Torts § 402A (1965)).
[B]efore recovery can be had under Section 402A, three elements must be established by proof:
(1) that the plaintiff was injured by the product,
(2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous, and
(3) that the defect existed at the time it left the hands of the seller.
Scordino, 662 So.2d at 642 (citation omitted).
¶ 5. The jury instruction given in this case, jury charge number 14A, followed Horton v. American Tobacco Co., 667 So.2d 1289, 1295 (Miss.1995) verbatim. Scordino, 662 So.2d at 642; is the law in Mississippi with regard to strict products liability. See Horton v. American Tobacco Co., 667 So.2d 1289, 1295 (Miss.1995); Scordino, 662 So.2d at 642; Daniels v. GNB, Inc., 629 So.2d 595, 600 (Miss.1993); Sperry-New Holland v. Prestage, 617 So.2d 248, 254 (Miss.1993); Coca Cola Bottling Co. Inc. v. Reeves, 486 So.2d 374, 377-78 (Miss.1986).
¶ 6. "On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." Lovett v. Bradford, 676 So.2d 893, 896 (Miss.1996). "Accordingly, defects in specific instructions do not require reversal `where all instructions taken as a whole fairlyalthough not perfectlyannounce the applicable primary rules of law.'" Id. at 896-97 (quoting Peoples Bank and Trust Co. v. Cermack, 658 So.2d 1352, 1356 (Miss.1995)). The trial court will not be held to have erred unless the complaining party can show that the denial of the instruction probably did cause an improper judgment. Instruction 14A, as worded, reflects that the jury was properly instructed with regard to the elements of strict liability. We conclude that the trial court did not err in refusing to give an instruction which further defined the term "unreasonably dangerous."

II. Failure to Give Tendered Charge on the Effect of Settling Defendants
¶ 7. Due to settlements and voluntary dismissal, only two defendants remained when this trial began, Fibreboard Corporation and OCF. Following jury selection, O'Flynn and Hatten reached a settlement with Fibreboard and proceeded against OCF. Prior to opening arguments, the attorney for Fibreboard and an attorney for O'Flynn and Hatten announced that a settlement had been reached. The trial judge stated that he would "announce that during the opening to the jury." An attorney for O'Flynn and Hatten stated, "We will leave that to the Court." When the jury was seated the trial judge announced, "Members of the jury, first I want to announce that the Court has released Fibreboard Manufacturing Company from the case, and therefore, the only part left is the Plaintiffs versus Owens-Corning Fiberglas." No objection was made to this statement.
¶ 8. Under this assignment of error, O'Flynn and Hatten contend that the trial court erred by failing to give their tendered jury instruction:
Prior to the completion of this trial, Plaintiffs may have settled with one or more defendants who are no longer *532 present. In reaching your verdict in this case, you are to consider only the defendant now before the court. You should not consider the fault, if any, of the settling defendants. Likewise, you should not speculate on, or attempt to compensate in any way for the damages which plaintiffs may have received from the defendants not now before this court.
O'Flynn and Hatten, citing Whittley v. City of Meridian, 530 So.2d 1341, 1346 (Miss.1988), argue it was necessary to give the instruction because the jury is forbidden from considering the impact of a settling defendant. O'Flynn and Hatten further argue that the trial court's statement to the jury regarding Fibreboard contained no explanation of why Fibreboard was absent and that the jury's question asking whether Komp Equipment Corporation was still a part of the case verifies the need for the instruction.
¶ 9. When the trial judge made the above statement about Fibreboard Corporation no longer being a part of the case, no plaintiff attorney objected. The alleged inadequacy of the trial judge's statement was never brought to the trial judge's attention. This issue is not properly preserved for appeal since no objection was made at trial. Dixie Ins. Co. v. Mooneyhan, 684 So.2d 574, 585 (Miss.1996).
¶ 10. Komp Equipment Corporation was a former defendant. Komp Equipment was never identified to the jury at any point during the trial; however, Komp Equipment was mentioned in the written caption of the case on the jury instructions and on the verdict form. While tendering jury instructions, the trial judge pointed out that all of the instructions still had Komp Equipment listed. An attorney for O'Flynn and Hatten stated, "I guess it is in the heading." Nothing else was mentioned at this point and no attorney for O'Flynn or Hatten objected. In fact, Komp Equipment's name was found in the heading in the jury instructions tendered by O'Flynn and Hatten. Again, this issue is not properly preserved for appeal since no objection was made at trial. Dixie Ins. Co., 684 So.2d at 585.
¶ 11. Notwithstanding this procedural bar, we hold first that this issue is moot because the jury found no liability on the part of OCF. Secondly, we point out that though Whittley has not been expressly overruled, it appears to us that the case of Estate of Hunter v. General Motors Corp., 729 So.2d 1264 (Miss.1999) is now the controlling law with respect to the proper treatment of the issue of settling defendants. In Estate of Hunter, the Mississippi Supreme Court made it clear that the jury must apportion liability between trial defendants and settling defendants. Clearly, it would be error under Estate of Hunter to grant the instruction which O'Flynn and Hatten argue should have been granted here. However, as stated, since the jury found no liability on the part of OCF, the issue is moot. This issue is without merit.

III. Erroneous Instruction on the State of the Art
¶ 12. We first note that the jury was instructed regarding OCF's strict liability for selling a product in a defective condition unreasonably dangerous to the user or consumer. No objection is made to the instruction covering this aspect of OCF's strict liability theory. It is the court's instruction on the failure to warn theory of strict liability that is the subject of O'Flynn and Hatten's third assignment of error. In this assignment of error, O'Flynn and Hatten argue that the trial judge erred in granting OCF's "state of the art" instruction, jury instruction 10, as it was not an accurate statement of the law and implied that the standard was more of one of negligence than that of strict liability.
¶ 13. Again O'Flynn and Hatten failed to object to OCF's "state of the art" instruction. The record reflects the following:
Trial Judge: Instruction No. 10.

*533 Attorney for Plaintiffs: That is another one, same thing, that we have the counter charge on our state of the art, the same counter charge would apply in No. 10.
Trial Judge: No. 10.
Attorney for Defendant: We agreed on that yesterday.
Trial Judge: Admitted by the Plaintiff as given, no objection.
¶ 14. Later while discussing jury instruction 16, O'Flynn and Hatten's countervailing "state of the art" jury instruction, an attorney for O'Flynn and Hatten stated:
The Defendants tender, which was accepted by the Court, sets out the general standard of state of the art and what is reasonably expected to be known; and this simply gives the other side of that, that while that is true, the Defendant is held to the knowledge and skill of the expert and has a duty to inspect and test which is what the law is.
¶ 15. It is clear from the record that the attorneys for O'Flynn and Hatten did not object to OCF's "state of the art" instruction. Rather, extensive discussion was held with regard to O'Flynn and Hatten's "state of the art" instruction, jury instruction 16, which is not at issue here.
¶ 16. We "accept without hesitation the ordinarily sound principle that [an appellate court] sits to review actions of trial courts and that we should undertake consideration of no matter which has not first been presented to and decided by the trial court." Barnes v. Singing River Hosp. Sys., 733 So.2d 199(¶ 9) (Miss.1999) (quoting Educational Placement Servs. v. Wilson, 487 So.2d 1316, 1320 (Miss.1986)). A trial judge will not be found in error on a matter not presented to him for decision. Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss.1994).
¶ 17. Again, notwithstanding this procedural bar, the "state of the art" instruction considered with other jury instructions did not misguide the jurors. Both O'Flynn and Hatten and OCF argue as to what is the applicable state of the art standard to a manufacturer in a failure to warn theory of strict liability. The term "state of the art" is appropriate to a design defect not a failure to warn products liability cause of action. See Phillip L. McIntosh, Tort Reform in Mississippi: An Appraisal of the New Law of Products Liability, Part II, 17 MISS. C.L.REV. 277, 279-82 (1997); Bobby Marzine Harges, An Evaluation of the Mississippi Products Liability Act of 1993, 63 MISS. L.J. 697, 715-16 (1994); W. PAGE KEETON ET. AL., PROSSER AND KEETON ON THE LAW OF TORTS § 99, at 700-01 (5th ed.1984). No matter what the parties termed the applicable rule for a manufacturer in a failure to warn products liability action, the important question is whether the jury was adequately appraised of the correct standard.
¶ 18. "[W]ith any granted jury instruction challenged on appeal, two questions are necessarily implicated: Does the instruction contain a correct statement of the law, and is the instruction warranted by the evidence?" Langston v. Kidder, 670 So.2d 1, 5 (Miss.1995) (citations omitted). "A party is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction." First Investors Corp. v. Rayner, 738 So.2d 228 (¶ 26) (Miss.1999). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the evidence, there is no prejudicial error necessitating a reversal. See Lovett, 676 So.2d at 896.
¶ 19. The complained of jury instruction, jury instruction 10, reads as follows:
You are instructed that in considering what knowledge the defendant had or should have had, you must consider what is called the state of the art at the time the defendant's product was marketed.

*534 "State of the Art," as I use the term, means simply those things which were generally known to the medical and scientific community about a particular product at a given point in time by the application of reasonable, developed, human skill and foresight. Although a manufacturer is obligated to keep informed of scientific knowledge and discoveries relating to its products, a manufacturer is not automatically required to know what the state of the art is at a particular time. It is charged only with the duty to exercise reasonable care to keep abreast of the developments in the medical and scientific community relating to its products.
The term state of the art does not necessarily mean what one doctor, scientist, or person in the industry or another industry might have known at a given time if such knowledge was not known to the scientific, medical, insulation or other industrial community, but means what was generally accepted or known about the subject by those who were knowledgeable in the scientific, medical, insulation and other industrial communities at the time in question. The state of the art is not an unchanging level of knowledge, but is constantly altered by scientific and medical advances.
¶ 20. OCF argues that the above instruction was the correct statement of the law as it closely mirrors the language contained in Mississippi Code Annotated § 11-1-63(c)(i) (Supp.1999) which sets the knowledge imputed to a manufacturer in a failure to warn products liability cause of action. This section states:
(c)(i) In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)(2) of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize it dangerous condition.
Miss.Code Ann. § 11-1-63(c)(i) (emphasis added). In their rebuttal brief, O'Flynn and Hatten argue that this standard is not applicable because the statute did not become effective until July 1, 1993, and the complaints were filed before this date. In 1993, the Mississippi Legislature enacted Mississippi's Products Liability Act with section 11-1-63(c)(i) applicable to actions filed on or after July 1, 1994. Since O'Flynn and Hatten filed their complaints before this effective date, the Mississippi Products Liability Act is inapplicable.
¶ 21. In their argument, O'Flynn and Hatten opine that the complained of instruction was an incorrect statement of the law in Mississippi as it held OCF to a negligence standard. Neither O'Flynn and Hatten or OCF point this Court to any Mississippi jurisprudence pronouncing what the standard of care was required of a manufacturer in a failure to warn case before the inception of the Mississippi Products Liability Act.
¶ 22. In discussing pre-act Mississippi law on failure to warn cases, commentators have found that Mississippi strict liability followed a negligence based approach after adopting Restatement (Second) of Torts section 402A. See McIntosh, supra, at 304 (citing March M. Hager, Don't Say I Didn't Warn You (Even Though I Didn't): Why the Pro-Defendant Consensus on Warning Law is Wrong, 61 TENN. L.REV. 1125, 1130 (1994); 1 M. STUART MADDEN, PRODUCTS LIABILITY § 10.3, at 377 (2d ed.1988); Olson v. Prosoco, Inc., 522 N.W.2d 284, 289 (Iowa 1994) ("[A]ny posited distinction between strict liability and negligence principles [in warning cases] is illusory.")).
¶ 23. One commentator had this to say about pre-Mississippi Products Liability Act failure to warn products liability suits:

*535 The cause of action of failure to warn may be based on the theory of negligence or strict liability in tort. The strict liability in tort theory is derived from State Stove Manufacturing Co. v. Hodges, [189 So.2d 113 (Miss.1966)] and section 402A of the Restatement (Second) of Torts. The negligence theory is derived from section 388 of the Restatement (Second) of Torts.
In order to recover in a failure to warn cause of action, the plaintiff has to prove that the manufacturer or seller knew or had reason to know of the hazard or risk associated with the product about which it failed to warn. In proving the foregoing, the plaintiff is in effect proving that the defendant was negligent in its failure to warn. Hence, even though the cause of action for failure to warn could be based on negligence or strict liability in tort, the two theories, while conceptually different, often merge into a single breach of duty.
Harges, supra, at 718-19 (footnotes omitted) (emphasis added). "In general, courts, including Mississippi courts, have not imputed knowledge to the manufacturer of dangers that were not reasonably foreseeable or knowable." McIntosh, supra at 304 (footnotes omitted).
¶ 24. Under the generally accepted view, the claimant must prove that the manufacturer was negligent. KEETON, supra, at 697. "There will be no liability without a showing that the defendant designer knew or should have known in the exercise of ordinary care of the risk or hazard about which he failed to warn." Id. Also, under Restatement (Second) of Torts § 402A, cmt. j, a manufacturer is only "required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ... danger."
¶ 25. Given the foregoing, we find Jury Instruction 10 adequately instructed the jurors of the standard of care imputed to a manufacturer in a failure to warn theory of a strict liability cause of action.

IV. Confusing Nature of the Charge as a Whole
¶ 26. O'Flynn and Hatten urge that the confusing nature of the charges as a whole constituted error. Specifically, they argue the sequence in which the charges were read was confusing. Substantive charges were mixed in with general background charges. The charges proffered by the respective sides on specific issues were not read in conjunction with one another, thereby leaving the impression of there being conflicting charges. Further, sufficient general charges on issues applicable to all civil jury trials were not given. O'Flynn and Hatten urge this Court that it was unfair to them to leave the jury confused in such a long, complex trial.
¶ 27. "The Circuit Court enjoys considerable discretion regarding the form and substance of jury instructions." Splain v. Hines, 609 So.2d 1234, 1239 (Miss.1992). "Our overarching concern is that the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it." Id. (citing Rester v. Lott, 566 So.2d 1266, 1269 (Miss. 1990)). "We read the jury instructions as a whole, our focus upon what the jury heard and not on what was kept from it.... Defects or inadequacies in particular instructions do not trouble us, so long as the aggregate of the instructions, taken as a whole, fairly, though not necessarily perfectly, express the applicable primary rules of law." Splain, 609 So.2d at 1239 (citing Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40-41 (Miss.1989); Detroit Marine Engineering v. McRee, 510 So.2d 462, 465 (Miss.1987); Tippit v. Hunter, 205 So.2d 267, 271 (Miss.1967); Walker v. Polles, 248 Miss. 887, 896, 162 So.2d 631, 634 (1964)).
¶ 28. An admittedly confusing instruction did not require reversal when considered with others that did correctly *536 state the law, coupled with the circuit judge's instruction that the jury was not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Motorola Communications and Elecs., Inc. v. Wilkerson, 555 So.2d 713, 722 (Miss.1989).
¶ 29. In this case the circuit judge, in Instruction C.01, charged the jury:
Although you as jurors are the sole judges of the facts, you are duty bound to apply the law as stated in these instructions to the facts as you find them from the evidence before you. You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole.
¶ 30. During the hearing on the motion for new trial, counsel for the plaintiffs argued that error occurred by the confusing presentation of the jury instructions. The trial judge stated that he usually organized the jury instructions in some sort of sequence, but he stated due to time constraints he read them as he had them.
¶ 31. How jury instructions are arranged and whether the arrangement might have been confusing is not the applicable standard set for this Court. Rather, our job, as an appellate court, is to review the jury instructions as a whole to determine whether "the aggregate of the instructions, taken as a whole, fairly, though not necessarily perfectly, express the applicable primary rules of law." Splain, 609 So.2d at 1239. When the instructions are read as a whole, the jury was correctly guided on the law in this case.
¶ 32. O'Flynn and Hatten also supplant their argument with the concept that the trial court erred by failing to give instructions on expert testimony or proximate cause. Without getting to the merits of this issue, we note that O'Flynn and Hatten did not tender an instruction on either. "Failure to request an instruction at trial works to bar assertion of error on appeal." Materials Transp. Co. v. Newman, 656 So.2d 1199, 1203 (Miss.1995).

V. Exclusion of Evidence of Universal Application of Corporate Documents
¶ 33. The trial court excluded several of O'Flynn and Hatten's exhibits which were collectively referred to as the "Hazard Documents" and the "Sumner Simpson Documents." Both of these groups of documents were proffered by O'Flynn and Hatten to establish that non-party asbestos manufacturers and product associations knew of health hazards arising with exposure to asbestos fibers. O'Flynn and Hatten argue that the knowledge on the part of other manufacturers was relevant to its failure to warn theory of recovery in this product liability case because OCF should be presumed to know of all scientific advances regarding its product. As stated above, the standard for a manufacturer in a failure to warn theory of recovery in a products liability case is not what any expert may have known, but rather there will be no liability without a showing that the manufacturer knew or, in the exercise of ordinary care, should have known that its product was unreasonably dangerous.
¶ 34. "[D]ecisions concerning the relevancy of evidence are in the broad discretion of the trial court." Terrain Enter., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995). Generally, the admission or exclusion of testimony based on relevancy is within the discretion of the trial judge, and this Court will reverse only if it finds that an abuse of discretion has occurred. Id. "[F]or a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." Id. (citations omitted).

a. Hazard Documents
¶ 35. The documents referred to as "Hazard Documents" consist mainly of correspondence between persons at Owens-Illinois (not OCF) and persons at Saranac *537 Laboratories where tests regarding asbestos were conducted on behalf of Owens-Illinois. Tests were run on Kaylo as early as 1943 by Dr. Leroy Gardner at the New York Saranac Laboratories. Dr. Gardner's successor at the laboratory was Dr. Vorwald and his successor was Dr. Schepers. Over the years, various personnel from Owens-Illinois communicated with Drs. Gardner, Vorwald, and Schepers. The Owens-Illinois personnel included Mr. Willis Hazard, the industrial hygienist, and Mr. U.E. Bowes, the director of research. These correspondences between Owens-Illinois and Saranac Laboratories involve testing on Kaylo and the conclusion that inhalation was capable of producing asbestosis and should be regarded as a potentially-hazardous material.
¶ 36. O'Flynn and Hatten's argument during the pretrial exhibit conference for admission of these documents was based upon Hazard's testimony that OCF received these documents from Owens-Illinois at the instance of Hazard. Hazard testified that in 1958 he boxed up this correspondence and sent it to OCF. However, Hazard testified that he did not know how much of the correspondence was in the file. He also testified that he had no recollection of talking to anyone at OCF about the study or calling any OCF personnel and giving the information and results from the study. O'Flynn and Hatten were unable to prove that OCF ever received these documents.
¶ 37. The trial court found that because O'Flynn and Hatten were unable to establish that OCF either knew or should have known of these documents, or that the documents were reasonably available, the "Hazard Documents" would be excluded. We find that there was no abuse of discretion by the trial judge in excluding these documents, especially in light of the standard applicable to a manufacturer in a failure to warn cause of action.

b. "Sumner Simpson Documents"
¶ 38. The trial court excluded a group of documents collectively referred to as the "Sumner Simpson Documents." Sumner Simpson was president of the Raybestos-Manhattan Corporation from 1929 to 1953. Raybestos-Manhattan was a manufacturer of asbestos-containing products. The documents chronicle the correspondence between Simpson, and among others, Vandiver Brown, the general counsel for Johns-Manville from 1935-1939. Johns-Manville was also an asbestos manufacturer. O'Flynn and Hatten argue that had the jury in this case had the benefit of the correspondence between these two companies, they would have had further evidence that the asbestos manufacturing industry knew, as early as the 1930's, of the health hazards of asbestos.
¶ 39. The trial judge determined that the "Sumner Simpson Documents" should be excluded because they consisted of correspondence between entities other than OCF and were not generally accessible medical or scientific documents reporting on asbestos. There was no abuse of discretion on the part of the trial judge to determine that such documents were not reasonably available knowledge imputable to OCF.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. LEE, J., CONCURS IN RESULT ONLY.