MAXWELL, J.,
specially concurring:
¶ 56. I agree with the result reached by the majority but write separately to address my reasons for doing so.
I. The Jury’s Verdict
¶ 57. Like most cases alleging negligence on the part of doctors and nurses engaged in professional services, this case is replete with conflicting expert testimony concerning causation. While there is certainly room for disagreement with the jury’s ultimate evaluation of the disputed evidence, the task of wading through competing expert testimony and resolving conflicting factual evidence falls properly within the jury’s province-not an appellate court’s. In performing its role as the fact-finder, a jury is “free to accept or reject any or all of the testimony and evidence presented.” Johnson v. St. Dominics-Jackson Mem'l Hosp., 967 So.2d 20, 23 (¶ 11) (Miss.2007). So long as opinion testimony is properly admitted, an appellate judge’s hands are largely tied, particularly in making credibility assessments.
*784 ¶ 58. Before the jury began its deliberations, the circuit judge instructed the jury:
You should consider each expert opinion received into evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that a reason given in support of the opinion is not sound, or that the opinions are outweighed by other evidence, then you may disregard the opinion entirely.
¶ 59. Baptist does not claim this instruction was in error or that the jury was otherwise improperly instructed about how it should size up each expert’s opinion. Instead, Baptist essentially argues it presented medical experts in a greater quantity and quality (treating-physicians versus non-treating) than Jonathan Kelly. But the mere number of experts offered is by no means a controlling factor. See Univ. Med. Ctr. v. Martin, 994 So.2d 740, 748 (¶ 33) (Miss.2008) (holding the findings of the trial judge, sitting as fact-finder, would not be disturbed “merely for adopting the testimony of one party’s [single] expert while disregarding that of the other party’s [four] experts”). Jurors are certainly free to accept or reject expert testimony as they see fit, even if that means rejecting a host of experts, in the face of a lone contradictory opinion. Apparently, such was the case here, as the jury chose to accept Jonathan’s medical-causation expert over Baptist’s. Perhaps the jury was skeptical of the opinions of treating physicians, who were also seated at the defense table. But such speculation on our part is unnecessary, since Jonathan’s expert was duly qualified and had reviewed Ellen Kelly’s medical records before opining that she died from anaphylactic shock, in reaction to exposure to latex. While the dissent claims the medical evidence outweighs this opinion, a reviewing court should not supplant a jury’s decision when it is supported by substantial evidence. Thus, I find we are restrained to interfere in this instance.
II. Jury Instruction 15
¶ 60. Baptist and the dissent take issue with jury instruction 15, claiming it was given in error and caused a great injustice by misstating the law. After a close examination of this jury instruction and considering our required standard of review, I have no option but to disagree. Jury instruction 15 did not, as the dissent suggests, permit the jury to find Baptist hable solely though its nurses’ violations of hospital policy. Instead, it instructed the jury that if it found the nurses failed in any of the following — (1) to properly assess Ellen’s risk for latex allergy, if any; (2) to properly inform the treating physicians of Ellen’s risk for latex allergy, if any; or (3) to implement Baptist’s polices and procedures in regard to latex allergies, if any— and further if the jury found the failure(s) constituted negligence “as that term is defined elsewhere in theses instructions, and that this negligence, if any, caused, or contributed to cause, injury or damage to Ellen,” then the jury should return a verdict against Baptist.
¶ 61. Precedent clearly instructs that appellate courts do “not review jury instructions in isolation[.]” Instead, reviewing courts are required to “read [them] as a whole to determine if the jury was properly instructed.” O’Flynn v. Owens-Corning Fiberglas, 759 So.2d 526, 531(6) (Miss.Ct.App.2000) (quoting Lovett v. Bradford, 676 So.2d 893, 896 (Miss.1996)). So here we are tasked with considering jury instruction 15 in tandem with jury instruction 10 — the companion “negligence” instruction referenced in jury instruction 15. An objective review of jury instruction 10 *785 reveals that it neither defines “negligence” as a failure to follow internal hospital procedures nor states that a regulatory violation amounts to negligence per se. Rather, jury instruction 10 reads:
[T]he word “negligence” as used in the instructions of the Court means the doing of something that a reasonably prudent, minimally competent nurse or physician, as the case may be, would not have done under the same or similar circumstances, or the failure to do something which a reasonably prudent, minimally competent nurse or physician, as the case may be, would have done under the same or similar circumstances.
See Moore ex rel. Moore v. Mem’l Hosp. of Gulfport, 825 So.2d 658, 665-66 (¶24) (Miss.2002) (noting that a violation of an internal regulation, while not creating a separate cause of action, “may serve as evidence of negligence”); see also Quijano v. United States, 325 F.3d 564, 568 (5th Cir.2003) (applying Texas law) (Though “hospital rules alone do not determine the governing standard of care[,]” the “hospital’s internal policies and bylaws may be evidence of the standard of care[.]”); Melerine v. Avondale Shipyards, Inc., 659 F.2d 706, 713 n. 22 (5th Cir.1981) (noting plaintiffs proper use of internal regulation “only as evidence of negligence, which the trier of fact ‘may accept or reject as it sees fit’ ”) (citing W. Prosser, The Law of Torts s 36, at 201). When read as a whole, I am simply unable to find the jury instructions misstated the proper negligence standard.
¶ 62. And reading beyond jury instruction 15 allays any concern that the instructions improperly transferred the doctors’ non-delegable duties to Baptist’s nurses. The dissent argues that, because Dr. Odom and Dr. Ingram had non-delegable duties to take Ellen’s patient history, the circuit court committed reversible error by instructing the jury about Baptist’s duty to Ellen.
¶ 63. But the jury was instructed to consider both the doctors’ non-delegable duties as Ellen’s treating physicians as well as Baptist’s duties. Jury instruction 14 described the separate claims Jonathan had brought against Baptist and the two doctors. The jury was given separate instructions to determine duty and breach of that duty by Baptist (jury instruction 15) and duty and breach of that duty by the doctors (jury instruction 18). Aided by expert testimony about what a reasonably competent nurse working for a hospital would have done and what a reasonable competent physician would have done, the jury separately considered: (1) whether the nurses negligently failed to assess for a latex allergy, to inform the physician about a latex allergy, and/or to implement procedures regarding latex allergies; and (2) whether the two physicians negligently failed to complete a clinical history, to diagnose a latex allergy and allergic reaction, and/or to take proper precautions against latex allergy. That the jury’s separate considerations led to separate conclusions — that Baptist was liable, but the doctors were not — was within their purview.
¶ 64. Jonathan’s theory of liability was not that the doctors should be vicariously liable for the nurses’ actions performed on behalf of the doctors. Instead, jury instruction 14 states the nurses were working within the course and scope of their employment with Baptist, not the doctors. Thus, it was not inconsistent to hold that the nurses were negligent but the treating physicians were not. Cf. Sacks v. Necaise, 991 So.2d 615, 619 (¶ 9) (Miss.Ct.App.2007) (holding doctor vicariously liable for administration of chemotherapy drugs by nurse under doctor’s supervision and performing non-delegable duty of doctor).
*786 ¶ 65. For these reasons, I specially concur with the majority’s decision that the jury’s verdict should not be disturbed.
ROBERTS, J., JOINS THIS OPINION. ISHEE, J., JOINS THIS OPINION IN PART.